**AMERICAN OFFSHORE WORKOVER, INC., Plaintiff-Appellee,**

v.

**The DOW CHEMICAL COMPANY, INC., Defendant-Appellant.**

No. 72-2711.

United States Court of Appeals, Fifth Circuit.

April 27, 1973.

John M. McCollam, Charles M. Steen, New Orleans, La., for defendant-appellant.

Richard T. Regan, Metairie, La., for plaintiff-appellee.

Before COLEMAN and SIMPSON, Circuit Judges, and ESTES, District Judge.

PER CURIAM:

Defendant-appellant Dowell, a division of The Dow Chemical Company, (Dowell) was preparing to diversify its business to include the stimulation of old oil and gas wells (workover) in the Gulf of Mexico. It leased from plaintiff-appellee American Offshore Workover, Inc., (AOW) the vessel "Mr. Don" to be used as a mobile platform for servicing the wells in its offshore workover operations. The term of the lease was for three years and AOW was aware of the purpose for which Dowell had leased the vessel.

Dowell used the vessel for one year in the western Gulf area without complaint, but when it attempted to move further eastward it was advised by AOW for the first time that such area was outside of the navigational capabilities of the "Mr. Don". Because the navigational limits of the vessel precluded Dowell from working what it regarded as its prime workover market area, and AOW refused to modify the vessel to enable it to work the desired area, Dowell terminated the contract. AOW successfully sued for breach in the court below. We affirm.

The "Mr. Don" was a self-propelled, self-elevating, mat-supported vessel, which meant it jacked up out of the water by supporting its weight on four legs that were attached to a mat which in turn rested on the bottom subsoil of the sea. The ability of such a vessel to support its weight on the bottom depended largely on the consistency of the sub-soil; soft-bottom areas usually failed to provide the requisite support and greatly added to the danger of the vessel's turning over.

The question whether Dowell was justified in terminating its contract with AOW is answered by examining the correspondence AOW sent Dowell informing the latter of the "Mr. Don"'s limitations. We approve the district court finding that such correspondence consisted simply of recommended safety practices because of erratic soil changes on the sea-bottom subject to modification as the situation changed. We reject Dowell's contentions here as in the court below that it was ordered by the letters to eliminate completely a whole important market area without justifiable cause, and was hence justified in terminating the contract.

The full texts of the two letters AOW sent Dowell are reproduced in the margin.[1] At the onset of the first letter

---

1.   "July 15, 1968
The Dowell Division
Dow Chemical Company
640 Oil & Gas Building
1100 Tulane
New Orleans, Louisiana 70032
Attention: Mr. M. G. Harding
Gentlemen:
Until further notice operations of the Mr. Don in Jacked-up Configuration are not to be conducted in areas with under-consolidated or very recent clay bottoms.

Operations will be limited to that portion of the Texas-Louisiana Gulf Coast between 89 deg. 5′ West Longitude and 95 deg. West Longitude.
The 'West Delta' areas which cannot be served include Blocks 50, 57, 80, 85, 108, 110, 127, 128, 145, and 146, other areas east of the line 89 deg. 5′ West Longitude are outside our operational capabilities.
In every case, regardless of the location, the move supervisor will check bottom conditions to ascertain that sufficient

AOW expressly put Dowell on notice that the instructions to follow were subject to change. The letter was equally clear that the limitations imposed on the vessel were made in view of its self-elevating, mat-supported nature and the danger inhering in working in areas with "underconsolidated or very recent clay bottoms". Indeed, a rather elaborate and cautious empirical "on location" test was ordered to "check bottom conditions to ascertain that sufficient bearing surface exists" to support the vessel. In short, there was no absolute prohibition against work in any area, but no more than a requirement that the sea-bottom be tested to ensure the safety of the vessel and her crew. The district court's holding was supported by the record, Washington Aluminum Company v. Pittman Construction Company, 5 Cir. 1967, 383 F.2d 798, 804.

We do not discern merit in Dowell's other contentions, including its attack on the method of computation and amount of damages allowed for the breach of contract.

Affirmed.

bearing surface exists by elevating the vessel two or three feet above the water and holding that position for one hour. If after one hour the bottom soil is holding, the vessel can be elevated to the planned working height. The vessel will be immediately lowered should a list to either Port or Starboard or to the Stern or Bow develop which exceeds three degrees.

Please be governed accordingly when ordering the vessel to work site. Should you have any questions, please advise.

Yours very truly,

AMERICAN OFFSHORE WORK-
OVER, INC.
/s/ Jack R. Hilder, Jr.,
Jack R. Hilder, Jr., President"

Dowell Division
Dow Chemical Company
1100 Tulane Avenue
New Orleans, Louisiana 70119
Attention: Mr. Max Harding
Subject: Mr. Don Operating Limits
Dear Sir:

Further to my letter of July 15, 1968, the operations of the M/V Mr. Don are limited to that portion of the Texas-Louisiana Gulf Coast between 89 deg. 30' West Longitude and 95 deg. 0' West Longitude.

Your inquiry regarding Blocks 22 and 24 of the West Delta area is acknowledged. These blocks are appr- (sic) oved subject to the 'on location' test in accordance with the procedure outlined in my letter of July 15, 1968.

Should you require any additional data, please advise.

Yours very truly

AMERICAN OFFSHORE WORK-
OVER, INC.
/s/ Jack R. Hilder, Jr.,
Jack R. Hilder, Jr., President"